UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>EMANUEL PANOUSOS,<br>          Defendant. | Criminal No. 19-10128-DPW |

### GOVERNMENT'S SENTENCING MEMORANDUM

The government submits this memorandum in support of its recommendation for a sentence of imprisonment at the low end of the applicable sentencing guidelines range (21-27 months).

### Offense Conduct and Personal Characteristics

From 2013 through 2015, the defendant Emanual "Mike" Panousos ("Panousos") skimmed cash receipts totaling about $1.9 million from his restaurant, Mike's Famous Roast Beef and Pizza in North Reading. He failed to report to the IRS the diverted cash receipts, much of which was for his own personal benefit, as well as to pay his suppliers and employees. He thereby avoided paying a total of $387,180 in federal taxes during those three years.

Panousos purchased the restaurant in 2013 using funds derived, at least in part, from his father's own cash-skimming tax fraud scheme. PSR ¶¶44, 63. Although Panousos was born and raised in the United States, and started his own business well into adulthood, he nevertheless primarily blames his Greek heritage and upbringing for his current situation. *See* Oct. 1, 2019 letter from psychologist Daniel Kriegman, Ph.D. at 3 ("He appears to have never questioned the family's way of doing business (i.e., hiding substantial amounts of income) that were probably

1

brought overseas from Greece"), and 5-6 ("Did he know he was cheating on his taxes? Without question. But that simply was his Greek immigrant family's way of doing business").[1]

Despite this prosecution, Panousos has still been unable to conform his conduct to the law.  First, he has failed to file a personal tax return for 2016.  PSR ¶74.[2]  Second, according to the IRS, he has also failed to file a 2016 return for his restaurant.  Third, Panousos provided Probation with a "tax history" for the restaurant, which purported to reflect what had been filed with the IRS by his business for the years 2014-2018, when no corporate return was actually filed for 2016.  Moreover, the $1,022,299 in "gross receipts" for 2016 reflected on the "tax history," was substantially less than the gross receipts in the restaurant's Point of Sale ("POS") system.  Attached as Exhibit A is a "screen shot" from the restaurant's POS system reflecting gross sales in 2016 of $1,612,324.

Finally, Panousos has failed to comply with this Court's release conditions: he tested positive for marijuana six times, and cocaine once, and failed to appear for drug testing six times. PSR ¶¶3, 60.

**Sentencing Guidelines**

The government agrees with Probation that the tax loss is $387,180, the Total Offense Level is 15, the Criminal History Category is II, and the applicable sentencing guidelines range is 21-27 months in Zone C.  A sentence at the low end of that range is sufficient, but not greater than necessary to comply with the sentencing factors set forth in 18 U.S.C. §3553(a).

---

1 Counsel for Panousos advised that he intends to attach the letter to his sentencing memorandum.
2 The IRS advises that Panousos filed his 2018 return about two weeks ago.

**Seriousness of the Offense, General and Specific Deterrence, and Respect for the Law**

This is a case involving a substantial tax loss committed over a period of several years. The offenses are serious, and a sentence of incarceration is necessary for both general and specific deterrence.

"Taxes are what we pay for civilized society . . . ." *Compania General De Tabacos De Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100 (1927) (Holmes, J., dissenting). The money that tax cheats avoid paying eventually comes out of the pockets of other, honest taxpayers. "Tax offenses, in and of themselves, are serious offenses." U.S.S.G. §2T1.1, comment. (backg'd). The sentencing guidelines for tax offenses were established in response to pre-guidelines practices in which roughly half of all tax evaders were sentenced to probation without imprisonment, and the other half to average prison terms of twelve months. *Id*. The tax guidelines were "intended to reduce disparity in sentencing for tax offenses and to somewhat increase average sentence length." *Id*. By increasing sentences for tax offenses, the Sentencing Commission anticipated that it would have a deterrent effect on others, noting that any additional costs of imprisonment would be "inconsequential" in relation to the potential increase in revenue. *Id*.

Panousos's failure to comply with his release conditions, and failure to file all of his tax returns, also indicate a need for specific deterrence in this case. Panousos does not appear to fully accept and acknowledge his own decision-making in committing these crimes, but instead to place much of the blame on what Krieger's letter suggests was a Greek culture of lawlessness. A substantial sentence of imprisonment is necessary to promote Panousos's respect for the law.

**Panousos's personal and business obligations**

Panousos is expected to argue that he should not be sentenced to prison because of his personal and business obligations. However, none of the obligations reflected in the PSR support the substantial variance from the guidelines that Panousos is expected to request.

For example, according to Kriegman's letter, Panousos helps his father and brother set up at their restaurant each morning by "moving 75 lb. bags of flour and helping with other restaurant prep." The letter does not indicate why Panousos's father and brother could not hire someone to perform those tasks.

Similarly, Panousos told Probation that, despite having 27 employees, no one else could assume daily operations of the business if he were not available. Again, Panousos offered no reason why he could not hire someone to manage the restaurant in his absence, or put one or more of his 27 employees in charge to keep the business running.

Panousos is also expected to argue for a probationary sentence because he is apparently the sole support for his ex-wife and his children who live with her. No reasons were given for why his ex-wife is not employed. Nor is there a discussion of what other family resources might be available if she is unable to work. In any event, it is not uncommon that defendants' family members suffer financial or other hardships while the defendant is in custody, so that is not typically a factor supporting a probationary sentence in lieu of prison.

**Unwarranted disparities**

Finally, Panousos is likely to argue that it would be an unwarranted disparity to sentence him to prison, since his parents and brother were given sentences of probation for nearly identical conduct. This argument should be rejected. First, the other Panousoses were sentenced together,

and consistently, because they all committed their crimes together at the same family restaurant. Panousos committed his crimes alone in his own business. When he left the family business, he made his own independent decision to continue the family tradition of defrauding the IRS.

Second, and more importantly, in the earlier case, the spouse of one of the defendants had serious and well-documented medical issues. The Court's sentencing decisions were largely driven by its concern about the significant collateral consequences to a vulnerable child that were likely if those defendants were absent. That is simply not the situation in this case.

Finally, there is no more reason to look to the sentences imposed on Panousos' relatives than to sentences imposed in recent cases on other restaurant owners who committed similar crimes. *See, e.g., United States v. Konis*, Cr. No. 19-10223-DPW (owner of restaurant sentenced to three months in prison and $100,000 fine for tax fraud involving $175,000 tax loss); *United States v. Kalantzis*, Cr. No. 18-10148-WGY (owner of restaurant sentenced to a year and a day in prison and $25,000 fine for tax fraud involving about $380,000 tax loss); *United States v. Koudanis*, Cr. No. 15-10387-PBS (restaurant owner sentenced to two years in prison for tax fraud involving about $2 million tax loss). The sentences imposed in the earlier Panousos case should not serve as the benchmark for all future tax cases in this Court, whether or not the defendant's last name is Panousos.

### **Conclusion**

The Court should impose a sentence of incarceration that sends a message to other small business owners that cheating on taxes is a serious crime, and those caught doing so will certainly serve time in prison. A sentence of incarceration is also necessary to account for the

seriousness of Panousos's offenses, to promote respect for the law, and to send a message of deterrence to Panousos as well.

The government recommends that the Court sentence Panousos to 21 months in prison, followed by a 12-month term of supervised release. In addition, the Court should impose a fine of no less than $25,000, and a mandatory special assessment of $200.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Mark J. Balthazard*
MARK J. BALTHAZARD
Mark.Balthazard@usdoj.gov
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date, and an electronic copy will be sent by email to the Probation Officer.

Dated: October 30, 2019

*/s/ Mark J. Balthazard*
MARK J. BALTHAZARD