## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| | **DOCKET NO. 0101 1:19CR10128-1** |
| **v.** | |
| **EMANUEL PANOUSOS a/k/a "MIKE PANOUSOS"** | |

## DEFENDANT EMANUEL PANOUSOS a/k/a MIKE PANOUSOS' MEMORANDUM IN AID OF SENTENCING

NOW COMES the Defendant, Emanuel Panousos a/k/a Mike Panousos ("Emanuel") by and through his counsel, Richard C. Chambers, Jr., and respectfully submits this Sentencing Memorandum in support of his request for a downward variance to his sentence. In support of this request, this memorandum presents information and argument for the Court's consideration in exercising its discretion to sentence Emanuel to a non-prison sentence to include, *inter alia*, home confinement.

### *INTRODUCTION*

Emanuel understands that his and his family's actions furnish some framework for the Court's sentencing judgment. He understands, as well, that in previously sentencing his mother, father and brother, the Court has reached decisions on certain legal and factual issues that are critical to his sentence. This is the nature of a multi-defendant case, but Emanuel respectfully

1

requests that his Court keep an open mind about him and his arguments as it reviews this Memorandum through a lens that, for sentencing purposes, is properly designed to show a more complete picture of his life and deeds as a whole.

Emanuel submits this Sentencing Memorandum in support of his request that the Court sentence him to a non-guideline sentence of five (5) years' probation, in addition to whatever fine/restitution the Court deems appropriate. For the reasons set forth below, the Defendant submits that the sentence is "sufficient but no greater than necessary" to meet the purposes set forth in U.S.C. § 3553(a) (2). Considering his personal history, the sentences given by this Court to his family members, as well as the circumstances of the offense, it is a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment and affords adequate deterrence.

## A. *Defendant's Background*

Emanuel's mother and father were both born in Samos, Greece and immigrated to the United States without any money. Emanuel's father, William Panousos ("Bill") purchased Giovanni's Roast Beef & Pizza ("Giovanni's") in 1986 and it has been operated by Emanuel's entire family since that time. The entire family worked hard to build their business. The Panousos' had two (2) boys, Emanuel and Konstantinos ("Kosta").

Both boys worked at Giovanni's in Peabody and Kosta still works there today. Bill and Emanuel's mother Theodora ("Dora") have a number of health issues and transferred Giovanni's to Kosta and Mike's Famous Roast Beef to Emanuel prior to the store being raided by the Internal Revenue Service ("IRS"). Despite not owning Giovanni's, Emanuel still felt responsible to step in and help out his brother, as well as his parents, with the daily operations of their restaurant.

Emanuel has a history of giving back to his community, especially by being a sponsor in Twelve Step programs. Additionally, Emanuel is known around the community as the type of person to stop and help, and as someone who would give you the shirt off of his back.

### B. Legal Framework

    (i)      General Principles.

Although the United States Attorney submits that Emanuel has agreed to not contest departure pursuant to the plea agreement, he contends that this Court did in fact depart with respect to his father, mother and brother. Sentencing judges have long been determined to have the power to depart from the Sentencing Guidelines and grant a downward variance. One of the most oft-cited reasons for granting a downward variance is when a defendant is considered an "atypical" offender. Atypical offenders have been held to justify a departure from the Guideline Range. *See United States v. Rita*, 551 U.S. 338, 344 (2007) (holding that a traditional departure is justified "on the ground that [the defendant's] circumstances present an "atypical case" that falls outside the "heartland" to which the United States Sentencing Commission intends each individual Guideline to apply") (citing USSG § 5K2.0(a)(2)); *Koon v. United States*, 518 U.S. 81, 100 (1996) ("the severity of the misconduct, its timing, and the disruption it causes" are factors which influence a district court's determination of whether the misconduct in a particular instance makes the case atypical).

### C. Under the right circumstances, Probationary Non-Guideline sentences in Tax Cases are not uncommon and serve a deterrent effect without imposing a sentence "greater than necessary"

The Guidelines policy statement associated with tax crimes (§ 2T1.1) states that the primary consideration underlying the guidelines is deterrence and that "[r]recognition that the

sentence for a criminal tax case will be commensurate with the gravity of the offence should act as a deterrence to would-be violators." U.S.S.G., Vol.1 § 2T1.1, p.s.

Therefore, under the right circumstances, probationary non-Guideline sentences in tax cases are not uncommon and serve a deterrent effect without imposing a sentence *"greater than necessary"*. See *United States v. Taylor*, 499 F.3d 94 (1st Cir. 2007) (trial verdict in 16 count 26 U.S.C. § 7206 (2), aiding in the preparation of false returns, case where 30 to 37 month USSG range resulted in a sentence of 5 years' probation with 1 year in half-way house) [1]. See *United States v. Gardellini*, 545 F.3d. 1089 (D.C. Cir. 2008) (plea in 26 U.S.C. § 7206(1), case where 10 to 16 month USSG range resulted in a sentence of probation and the imposition of a fine.); *United States v. Coughlin*, 2008 U.S. Dist. LEXIS 11263 (2008) (plea in 26 U.S.C. § 7206 (1) case where 27 to 33 month USSG range resulted in a sentence of probation for 5 years, including 27 months of home detention); *United States v. O'Brien*, (U.S. Dist. RI 2014) (Plea and Information for three counts of Tax Evasion (26 U.S.C. § 7201) where Guideline range was 12-18 months (level 13) yielded 3 years' probation, restitution in amount of $171,990, with special assessment of $300.00. The underreporting of income (and tax loss) was used for the defendant's personal benefit and living expenses.); *United States v. Holbrook*, Docket No. 13CR0056-ML-LDA1 (also CR0049-001 Dist. of So. Carolina) (U.S. Dist. RI 2013) (Plea and Information of single conspiracy and single Tax Evasion (26 U.S.C. § 7201) where the Guideline range was 24-30 (level 17) yielded 5 years' probation with 12 months home detention and $1.2 million in

---

[1] Notwithstanding the probationary sentence in *Taylor*, the sentence was later vacated, *United States v. Taylor*. 128 S. Ct. 878, 169 L. Ed. 2d 712(2008) in light of *United States v. Gall* 552 U.S. 38 (2007). Thereafter, *United States v. Taylor*. 532 F.3d 68 (2008) remanded for reconsideration of the sentence. On reconsideration, the District Court imposed 2 months of institutional incarceration (summer months) along with the prior sentence. This case is differentiated from the instant case factually in that Taylor was found guilty after trial of 16 counts of aiding in the preparation of false returns and only accepted responsibility for his crimes at sentencing. Notwithstanding, this case is similar to the instant case because the details of the re-sentencing indicate that the sentencing Judge limited varied downward from the USSG for the purpose of allowing the defendant to continue employment.

restitution ordered. The defendant personally benefited from his crime and therefore assets, including a house, were also subject to forfeiture.); *United States v. Scialo*, Docket No. 13CR 00052 ML-LDA1 (U.S. Dist. RI 2013) (Plea and Information of a single count Tax Evasion (26 U.S.C. § 7201) where the Guideline range was 12-18 (level 13) yielded five (5) years' probation with $30,000.00 fine and special conditions).

In fact, when the United States Supreme Court considered whether a sentence of probation was reasonable, it stated "[w]e recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. [But noted] [o]offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007) (citing *United States v. Knights*. 534 U.S. 112, 119 (2001)). Further, and critically, the Court stated that "the Guideline gives no weight to the substantial restrictions of freedom involved in a term of supervised release or probation." *Id.*

It is noteworthy that in *Gall* the Unites States Supreme Court upheld a probationary sentence where the charged felony was a factually more serious crime than a tax crime. The *Gall* defendant was charged with conspiracy to distribute ecstasy, cocaine, and marijuana and though the applicable sentencing range was 30 to 37 months of imprisonment, he was sentenced to a 36-month term of probation. *Id.* at 42-43. Considering all of the factors under 18 U.S.C. § 3553(a), the court noted the Defendant's explicit withdrawal from the conspiracy almost four years before the filing of the Indictment, the Defendant's post-offense conduct, especially obtaining a college degree and starting his own successful business, the support of family and friends, lack of criminal history, and his age at the time of the offense conduct, all warranted the sentence imposed, which was sufficient, but not greater than necessary to serve the purposes of sentencing. *Id.* at 43-44. See also, *United States v. Bragg*, 582 F.3d 965, 973 (9th Cir. 2009)

Smith, N, dissenting ("custodial sentence in a tax case does not necessarily serve the interest of deterrence any greater than probation, fines and restitution do.")

For a macro-view of sentencing in the Unites States, data published by the *United States Sentencing Commission, Sourcebook* 2017, Table 27 & 27A, advises that 48.8% of the 430 tax cases sentenced within that fiscal year were sentenced below the advisory Guideline range; in 2013, in comparison, Table 27 & 27A show that of the 610 tax cases that year, 44.6% were sentenced below the advisory Guideline range. Conversely, only 36.9% and 35.1%, respectively, of the tax cases in 2012 and 2013 were sentenced within the Guideline ranges. *Id.* Out of the 431 tax cases in 2017, 32.6% of defendants received probation, with 22.5 % receiving probation only, and 13.7 % receiving probation and some form of confinement. *USSC Source Book 2017* at Table 12. Comparatively, out of the 605 cases in 2012, 35.7% of defendants received probation, with 19.5% receiving probation only and 16.2% receiving probation and some form of confinement. *USSC Source Book 2012* at Table 12. Out of the cases in 2013, 36.7% of defendants received probation, with 22.3% receiving probation only and 14.4% receiving probation and confinement. *USSC Sourcebook 2013 at Table 12.*

The guidelines allow for a downward departure if the activities for which a defendant is being sentenced are considered a single act of aberrant behavior. *U.S. v. Takai*, 941 F.2d 738, 743 (9th Cir. 1991). This conduct was not consistent with Defendant's prior history, his family life or his successful business. It was a terrible mistake from which he has learned, and one he will never repeat. Although the tax evasion charges for which Defendant pled guilty to involved transactions over a period of time, such a series of events can be termed a "single act" of aberrant behavior. *Takai*, 941 F.2d at 743.7. Defendant is seeking a downward departure since this crime was inconsistent with this nature.

6

The commentaries to the Sentencing Guidelines discuss a number of things that the courts may consider when determining if a departure is justified based on aberrant behavior.

> *Other Circumstances to Consider. —In determining whether the court should depart under this policy statement, the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense.*

*Sentencing Guidelines 5K2.20, application note #3*

Under the "totality of circumstances" approach, [the courts have held that when "determining whether an offense constitutes a single act of aberrant behavior, the reviewing court looks to the totality of the circumstances." *United States v. Fairless*, 975 F.2d 664, 667 (9th Cir. 1992)] the Defendant requests that the Court depart downward based on his long history of being an otherwise law-abiding citizen and his history of hard work to support his family.

**D. *Combination of Factors*:**

The sentencing commission specifically recognizes a downward departure based upon a combination of factors. Even before the commentary to the Sentencing Guidelines addressed a combination of factors for downward departure, several courts have held that even if no one single factor creates a ground for downward departure, a combination of several factors may do so. In this case, even if no single ground listed above is adequate to support a downward departure, Defendant asks that this Court review each of the grounds and grant him a downward departure based on the totality of the circumstances.

Imposing a sentence of probation will certainly reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense in this case. See 18 U.S.C. § 3553(a)(2)(A). A sentence of probation will accomplish the purposes set forth in § 3553(a)(2)(A), where Emanuel is an individual who has reached the age of forty-four (44) with

virtually no serious criminal record. Going forward, Emanuel will have a conviction on his record, which will certainly impact him for the rest of his life.

Emanuel has demonstrated his understanding of the seriousness of his offense and his respect for the law through his absolute and unconditional cooperation with government authorities. He has complied with every government request for interviews and, as of the date of this filing, paid a large portion of his outstanding Federal tax debt. Again, he laments the conduct that has brought him before this Court and he has learned, through the proceedings to date, that such conduct is not only wrong, but also carries severe consequences. Indeed, Emanuel has agonized over his behavior and the uncertainty it has brought to an otherwise stable family life.

For these reasons, there is no reason to believe that Emanuel will commit further crimes. This experience is one he never wishes to repeat, and, with such a low chance of recidivism, a sentence of probation is appropriate punishment in this case.

### E. The Defendant acknowledges that the offenses for which he stands convicted are serious offenses.

Pursuant to 18 U.S.C § 3553(a)(2), the Court must impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in the statute § 3553(a)(2), i.e., (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

The Defendant submits that he has two history points, which places him in the next to the lowest criminal history category. As previously mentioned, prior to his arrest for this offense he

was, and remains, a productive member of society. With two criminal history points, Emanuel is among the least likely of defendants to reoffend.

Although the Defendant has taken responsibility for committing a serious offense, he will be sufficiently punished by a period of probation. He has suffered the ridicule of a felony conviction. He has been extremely embarrassed by this conviction and has felt that he has let down children after always preaching to them to "do the right thing."

The Defendant further submits that there is no need to protect the public from him and no chance that he will reoffend. He is truly remorseful for his behavior and has learned a valuable lesson from this conviction that goes beyond simply feeling bad because he got caught. The "lesson", if you will, is to live a life free from dishonest and/or unlawful acts. This Court will never see him again.

### F. *The kinds of sentences available.*

The Defendant submits that a sentence of probation is appropriate in the case at bar. If the Court is of the opinion that some period of confinement is necessary, then the Defendant submits that a period of home confinement that would allow him to work and attend meetings with a substantial period of supervised release will serve the purposes of sentencing.

### G. *The need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct*

The Defendant is neither a "tax protestor" or someone with a character flaw who would always be seeking to beat the system. The Defendant's conviction stems from a "*manner of doing business*" so to speak, passed down from his mother and father; his mother "did the books" and his father provided the "seed money" to get "Mike's Roast Beef" up and running, and his father *dictated*, with a heavy hand, exactly how things would be done, and how the business would be run, which is not stated in an attempt to escape responsibility, as if the Defendant was

9

simply "following orders". It is stated to convey to the Court the inescapable fact that this was a

"family business", and the offenses for which his brother, father and mother have been punished

are part of the same course of conduct for which Emanuel now faces sentencing.  Emanuel is no

more, nor less culpable in this "scheme" than the rest of the family, yet the Government would

demand a prison sentence for Emanuel where probation was the appropriate sentence for the rest

of the family. The Defendant submits that *Booker, Gall* and *Kimbrough* have

returned sentencing authority to the judges to fashion an appropriate sentence. In the case at bar,

the Court is dealing with a hardworking man with practically no criminal history. He has never

been previously incarcerated. He is unlikely to reoffend. To imprison him would serve no

purpose other than the Government's apparent need to see someone in this family serve prison

time.

### VI. CONCLUSION

The Defendant respectfully submits the aforementioned reason of fact and law that he

should be sentenced to a term of five years' probation with appropriate financial penalties

> RESPECTFULLY SUBMITTED,
> Emanuel Panousos a/k/a Mike
> Panousos,
> By his Attorney,
>
> /s/ Richard C. Chambers, Jr.
>
> Richard C. Chambers, Jr.
> BBO: #651251
> 220 Broadway, Suite 404
> Lynnfield, MA 01940
> Telephone: 781-581-2031

Dated: October 31, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 31, 2019.


/s/ Richard C. Chambers, Jr.